# (February 3, 1983)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN MORELLO, Appellant. — Judgment, Supreme Court, Bronx County (Florio, J.), rendered April 9, 1981, convicting defendant after a jury trial of assault in the second degree and sentencing him to an indeterminate term of 1½ to 4½ years, affirmed. On this record, we find the proof legally sufficient to have posed a factual issue for the jury. The circumstantial evidence in the case, which was buttressed by defendant's admission of guilt at the time of his arrest, supports the finding by the trier of the facts that defendant was guilty beyond a reasonable doubt. Despite the suggestion by the dissent that defendant was not properly identified as the person who had assaulted D'Ambrosio, there was ample circumstantial evidence adduced on the issue. Tartarone testified that D'Ambrosio was struck by a big, "stocky fellow," about five feet, nine inches, maybe more than 220 pounds, following which D'Ambrosio " 'bing' hit the floor * * * was out like a light." Pergolis observed D'Ambrosio standing alongside the driver's door of his car, when a stocky, heavy man, caucasian, with facial hair, struck D'Ambrosio on the left jaw, knocking him down and causing the back of his head to strike the pavement. According to Pergolis, defendant looked like the individual who had struck D'Ambrosio, albeit he could not make a positive identification. D'Ambrosio, who was waiting next to his car for one of his friends, identified defendant as having been outside the bar on the night of the assault but he did not actually see the man who struck him. He specifically denied engaging in any conversation with defendant prior to the assault, nor did he take a swing at Morello. As a result of the incident, D'Ambrosio suffered a *cerebral* concussion, a cerebral contusion, brain-stem contusion and subarachnoid hemorrhage. The injuries resulted in amnesia, seizure disorder, epileptic disorder, hearing loss, loss of taste and smell, double vision, unsteadiness and organic mental syndrome. Defendant was arrested 11 days after the occurrence, at which time, in response to a request for pedigree information, he told the arresting officer that he was six-feet tall and weighed 250 pounds. Although he was clean shaven at the time of arrest, defendant

conceded that on the night of the incident he had a beard which he had removed three days prior to arrest. After *Miranda* warnings had been given, defendant admitted having "clocked the guy * * * standing by his car door, on the driver's side of the car." Defendant told the officer that "the guy took a swing at him * * * he ducked and he clocked the guy and the guy went right out." We disagree with the views expressed by the dissent that the evidence was insufficient as a matter of law. There is no proof that anyone other than D'Ambrosio was standing alongside the driver's door of the car at the time of the assault. Nor is there any question that D'Ambrosio was identified as the person who had been struck. The fact that the witnesses were unable to identify defendant in the lineup is not dispositive, particularly considering that the photograph shows that the lineup in this case was so outstanding that even one familiar with defendant could encounter great difficulty in making an identification. Nevertheless, there was sufficient legal proof consisting of the circumstantial evidence, the defendant's admission at the time of his arrest, corroborated by the fact that he matched the description which had been given of the assailant, to warrant submission of the case to the jury and to support the jury finding that defendant was guilty beyond a reasonable doubt. Concur — Ross, Bloom and Kassal, JJ.

Murphy, P. J., and Lynch, J., dissent in a memorandum by Lynch, J., as follows: We dissent and would reverse the judgment of conviction of assault in the second degree and dismiss the indictment for the reason that the defendant was not identified as the assailant beyond a reasonable doubt. On the evening of July 6, 1979, Sal Giancarli was honored at a bachelor party by his friends D'Ambrosio, Pergolis, Prestopino and three others. The celebration began at the Villa Nova restaurant, continued on at Rota's bar, and then moved to another bar, On the Rocks. They had several drinks during the course of the celebration but all insisted that they were not drunk when they left On the Rocks at 1:30 A.M. When the celebrants left the bar another group that included the defendant was gathered near the entrance. The celebrants began walking toward their cars across the street to a gas station area used as a parking lot when someone from the defendant's group threw a beer bottle that landed in front of them. This was followed by a thrown hubcap or wheel cover. When Prestopino threw the hubcap back at the other group, "[A]ll hell broke loose", in the words of Tartarone, an uninvolved bystander. In the melee Prestopino was knocked to the ground. His assailant was identified as someone other than the defendant. He was kicked and his leg was broken. Prestopino and Pergolis testified that they saw a different assailant, a stocky caucasian male, hit D'Ambrosio on the jaw, while D'Ambrosio was standing next to his car. D'Ambrosio did not see his attacker. He was knocked unconscious, hospitalized for 18 days and suffered permanent injuries. Tartarone testified that D'Ambrosio was struck by a bearded man who was five feet, eight or nine inches tall and weighed 210 to 220 pounds. The defendant was arrested 11 days later for the assault on D'Ambrosio. He is six-feet tall and weighed 250 pounds. He was clean shaven when arrested but admitted that he was bearded at the time of the fight. He told the police that he had "clocked" a man who was "bothering" a girl named Irene outside On the Rocks. He said the man had thrown a wheel cover at him and tried to punch him. He said the man he hit was standing by the driver's side of a car. He added that he "did" [presumably meaning hit] another man, then ran away. Prestopino was unable to identify the defendant in a lineup as D'Ambrosio's assailant. At the same lineup, Pergolis identified one other than the defendant as the assailant. Tartarone could only say that the defendant looked like D'Ambrosio's assailant, but he admitted that he did not see the assailant's face. There are only two pieces of

evidence connecting the defendant to the assault on D'Ambrosio. Both are sufficiently flawed to raise a reasonable doubt of the defendant's guilt. First, D'Ambrosio was standing by his car when he was attacked and the defendant admitted that the man he hit was standing by a car. But this free-for-all occurred on a public street and parking lot with who knows how many cars and who knows how many people hit who were perceived to have been standing near cars. Furthermore, the defendant identified the man standing by the car as the one who had thrown the wheel cover. This would have been Prestopino, not D'Ambrosio. The remaining piece of evidence, connecting the defendant to the assault on D'Ambrosio is Tartarone's identification, but the witness refused to be positive and certain about it. This is understandable. Tartarone had not seen the assailant's face and his description of the assailant to the police was of a man significantly shorter in height and lighter in weight than the defendant. The basis for this conviction is open to more reasonable doubt by Prestopino's inability to identify the defendant and Pergolis' identifying someone else as the assailant.